IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-374-BO-BM

| | | |
|---|---|---|
| U.S. TOBACCO COOPERATIVE, INC., f/k/a/ FLUE-CURED TOBACCO COOPERATIVE SPECIALIZATION CORPORATION, | ) ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | O R D E R |
| AXIS SPECIALTY INSURANCE COMPANY, | ) ) ) ) | |
| Defendant. | ) | |

This cause comes before the Court on defendant's motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and a hearing on the motion was held before the undersigned on May 28, 2024, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling. For the reasons that follow, the motion is granted in part and denied in part.

BACKGROUND

Plaintiff instituted this action by filing a complaint in this Court on July 14, 2023, alleging five breach of contract claims and four unfair and deceptive trade practice claims. Plaintiff's complaint arises from defendant's alleged wrongful failure to reimburse plaintiff for its settlement of and expenses related to three lawsuits or sets of lawsuits, which reimbursement plaintiff claims it is owed under an excess insurance policy issued by defendant.

Plaintiff is a non-profit cooperative marketing association of flue-cured tobacco farmers with its principal place of business in Raleigh, North Carolina. Defendant issued to plaintiff a claims-made excess liability insurance policy effective May 1, 2004, to May 1, 2005, with

$10,000,000 limits of liability for each claim and in the aggregate. Defendant's policy (the Axis Policy) is excess to a policy issued by Landmark American Insurance Company (Landmark) to plaintiff. Landmark issued to plaintiff a claims-made primary Directors and Officers (D&O) Liability policy, effective May 1, 2004, to May 1, 2007, with limits of liability of $10,000,000 in the aggregate (Landmark Policy). [DE 1 ¶¶ 1-6].

In January 2005, plaintiff Dan Lewis and others filed suit against plaintiff in Wake County, North Carolina Superior Court (Lewis Action). In February 2005, Kay Fisher and others filed suit against plaintiff in Wake County Superior Court (Fisher Action). Plaintiff timely notified defendant and Landmark of the Lewis and Fisher Actions and Landmark, pursuant to a reservation of rights, allocated 72% of plaintiff's defense costs for reimbursement under its policy, the primary policy, and designed the Lewis and Fisher Actions as one claim. Defendant acknowledged receiving notice of the Lewis and Fisher Actions, reserved its rights, and noted that the Axis Policy would apply after exhaustion through actual payment of the Landmark Policy limits [DE 1 ¶¶ 7-11].

Julian Rigby filed a civil action against plaintiff in the United States District Court for the Middle District of Georgia in 2005 (Rigby I Action) and plaintiff gave timely notice of the action to Landmark and defendant. Landmark took the position that the Rigby I, Lewis, and Fisher Actions all arose from the same or similar wrongful acts, and thus constituted one claim, but denied defense reimbursement and coverage for the Rigby I claim. Defendant notified plaintiff that it would not provide coverage if Landmark did not because it held a follow-form policy. Plaintiff disputed Landmark's decision and Landmark and plaintiff entered into a tolling agreement effective May 3, 2007, for the Fisher, Lewis, and Rigby I Actions pending their final resolution. [DE 1 ¶¶ 12-15].

2

Five additional actions were filed against plaintiff in Georgia state court in May 2007,[1] collectively referred to as the Georgia Actions. Plaintiff again provided timely notice to Landmark and defendant and Landmark acknowledged notice and again took the position that the Georgia actions arose out of the same or similar wrongful acts as the Lewis and Fisher Actions and that they constituted one claim. As with Rigby I, Landmark denied coverage for the Georgia Actions. Defendant adopted this position. In June 2013, Landmark agreed that the Georgia Actions were intended to be included in the May 2007 tolling agreement. In an opinion dated May 28, 2014, the Georgia court of appeals affirmed the trail court's summary judgment decision in Rigby II in plaintiff's favor on all claims except for the breach of fiduciary duty claim as well as any attendant attorney fees. [DE 1 ¶¶ 16-26].

In June 2012, plaintiff received a letter indicating that a group of cooperative members believed their interests were not adequately represented by the Lewis and Fisher Actions. These members, led by Teresa Speaks, demanded an allocation and distribution of their interests in plaintiff or the dissolution of plaintiff. Plaintiff gave Landmark and defendant timely notice of the demand. Landmark acknowledged the demand and treated the Speaks demand as based on the same or similar related wrongful acts raised in the Lewis and Fisher Actions and considered it to be part of a single claim. Defendant acknowledged notice and stated that its policy would apply only after exhaustion of the Landmark Policy by actual payment of the Landmark Policy limit. Teresa Speaks and others filed a putative class action in this district, No. 5:12-cv-729-D (Speaks Action), and plaintiff timely notified Landmark and defendant of the action. Landmark again acknowledged notice, treated the Speaks Action as based or the same or similar wrongful acts alleged in the Lewis and Fisher Actions and deemed the claims a single claim filed under

---

[1] The plaintiffs in the Georgia state cases were Swain, Griffis, Rigby (Rigby II), Altman, and Lee.

Landmark Policy. Defendant also acknowledged notice, agreed with Landmark's treatment of the Speaks Actions as a single claim along with the Lewis and Fisher Actions, adopted Landmark's prior coverage positions, and stated that defendant's liability would not attach until the underlying Landmark Policy limits were exhausted by payment. [DE 1 ¶¶ 27-34].

The Wake County Superior Court consolidated the Lewis and Fisher Actions (Lewis/Fisher Action) and settlement efforts were unsuccessful. In April 2021, the Wake County Superior Court ruled on cross-motions for summary judgment in an order that was "overwhelmingly adverse" to plaintiff. [DE 1 ¶ 47]. The decision caused plaintiff's credit facility to declare plaintiff in default on its loans and block plaintiff's access to the credit facility, threatening plaintiff's ability to support its member-growers. [DE 1 ¶¶ 35-48].

Plaintiff filed an interlocutory appeal in May 2021 and the Wake County trial court scheduled the case for trial. On July 7, 2021, plaintiff filed for Chapter 11 bankruptcy, which automatically stayed Lewis/Fisher Action. Plaintiff filed an adversary proceeding in the bankruptcy court and the bankruptcy court permitted plaintiff to proceed with its appeal of the Wake County Superior Court's decision while the underlying Lewis/Fisher Action was stayed. Plaintiff ultimately reached a global, comprehensive settlement of its bankruptcy case, including the adversary proceeding and the Lewis/Fisher Action. The Lewis/Fisher settlement is valued to be between $106,000,000 and $121,000,000. [DE 1 ¶¶ 49-57].

Landmark paid plaintiff its policy limits under the Landmark Policy in reimbursement of plaintiff's defense expenses, with its last payment having been delivered on August 7, 2020. Plaintiff requested reimbursement from defendant for the Lewis/Fisher settlement up to the limit of the Axis Policy and defendant denied coverage by letter dated May 17, 2023. Plaintiff requested reimbursement from defendant of unreimbursed defense expenses for the Wake County Superior

4

Court action, the appeal, and defense of the Lewis/Fisher action through the bankruptcy court and related adversary proceeding. This request was also denied by defendant by letter dated May 17, 2023. Plaintiff also requested reimbursement by defendant of defense expenses for defense of the Georgia Actions and reimbursement of defense expenses for defense of the Speaks Action, and defendant denied coverage. [DE 1 ¶¶ 58-63].

Plaintiff's breach of insurance contract claims are based upon wrongful denial of coverage or reimbursement for the Lewis/Fisher Action class settlement; wrongful refusal to reimburse for covered defense expenses incurred in the Lewis/Fisher Action; wrongful refusal to reimburse for defense expenses incurred in defending the Lewis/Fisher Action in the bankruptcy court; wrongful failure to reimburse promised 72% of defense expenses incurred in the Speaks Action; and wrongful refusal to reimburse covered fees and defense expenses incurred in the Rigby I and Georgia Actions. Plaintiff's unfair and deceptive trade practice claims are based upon the denial of coverage for the Lewis/Fisher class settlement; denial of reimbursement for the defense of the Lewis/Fisher Action; denial of reimbursement for defense of the Rigby I and Georgia Actions; and delay in reimbursement for defense of the Speaks Action.

## DISCUSSION

Defendant has moved to dismiss all but one of plaintiff's claims alleged in the complaint. In its motion, defendant argues that the contract exclusion in the Axis Policy precludes all defense and indemnity coverage for the Lewis/Fisher and Rigby/Georgia Actions, that the Lewis/Fisher Settlement is not a covered loss under the Axis Policy, that plaintiff's claims regarding the Rigby I and Georgia Actions are barred by the statute of limitations, and that plaintiff has failed to state a claim under North Carolina's Unfair and Deceptive Trade Practices Act. Plaintiff opposes the motion to dismiss.

5

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the facts alleged must allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of misconduct. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009). The court "need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Philips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (alteration and citation omitted).

In support of its motion to dismiss, defendant has filed several documents, including the relevant insurance policies and documents from the underlying civil actions, which the Court may consider without converting the motion to one for summary judgment "so long as the document [i]s integral to the complaint and there is no dispute about the document's authenticity." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

A. *The statute of limitations bars plaintiff's claims arising out of the Rigby I and Georgia Actions.*

"A motion to dismiss under Rule 12(b)(6) . . . does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Where, however, there are sufficient facts available on the face of the complaint to rule on an affirmative defense such as a statute of limitations defense, a court may do so at the Rule 12(b)(6) stage. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).

6

Under North Carolina law, the statute of limitations for a claim for breach of contract, including an insurance contract, is three years. N.C. Gen Stat. §§ 1-52(1); 1-52(12). The claim generally accrues when the breach occurs. *Skyline Restoration, Inc. v. Church Mut. Ins. Co.*, 20 F.4th 825, 830 (4th Cir. 2021); *Jackson v. Minnesota Life Ins. Co.*, 275 F. Supp. 3d 712, 728 (E.D.N.C. 2017). "North Carolina law has long recognized the principle that a party must timely bring an action upon discovery of an injury to avoid dismissal of the claim." *Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 2 (2017). A breach of contract cause of action is complete when the injury is or should reasonably be apparent. *Chisum v. Campagna*, 376 N.C. 680, 701 (2021).

Plaintiff alleges that both Landmark and defendant denied coverage for the Rigby I and Georgia Actions between 2005 and 2007. Plaintiff entered into a tolling agreement with Landmark in 2007 which was construed to cover the Rigby I and Georgia Actions, but plaintiff did not enter into a tolling agreement with defendant; plaintiff does not argue that any tolling agreement bars application of the statute of limitations for this claim. Defendant reiterated its denial of coverage on September 3, 2013. [DE 12-14]. The lead Rigby I/Georgia Action case, Rigby II, was concluded in plaintiff's favor after the court of appeals in Georgia affirmed the trial court's decision on November 3, 2016. *Rigby v. Flue-Cured Tobacco Coop. Stabilization Corp.*, 794 S.E.2d 413 (Ga. App. Ct. 2016). Landmark made its last payment to plaintiff for defense expenses under the Landmark Policy on August 7, 2020.

Plaintiff contends that because the Landmark Policy was not exhausted until August 7, 2020, its claim against defendant could not have accrued until that date, at the earliest. Plaintiff cites the Axis Policy which states that coverage under that policy "shall apply only after all applicable Underlying Insurance with respect to an Insurance Product has been exhausted by actual

7

payment under such Underlying Insurance . . . .. [DE 12-11 p. 3]. Plaintiff describes defendant's obligation to provide coverage under its excess policy as a "contingent future event[] that ... may not occur at all[,]" and argues that it was thus not ripe until the Landmark Policy was actually exhausted. *Hanover Ins. Co. v. Blue Ridge Prop. Mgmt., LLC*, 490 F. Supp. 3d 904, 914 (M.D.N.C. 2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)).

However, whether the Axis Policy layer would be reached based upon the amount of plaintiff's loss was not a "contingent future event." As defendant has argued, plaintiff knew that its loss exceeded Landmark's policy limits before August 2020 when Landmark made its last payment. Thus, even if defendant's prior denials of coverage in 2005-2007 and 2013 did not trigger the statute of limitations, at a minimum the limitations period was triggered when plaintiff knew or reasonably should have known that the primary policy limits would be exceeded. This is supported by a non-binding case cited by plaintiff, which held that "damages claims against excess insurers are not ripe if it has not yet been determined that the insured's losses exceed the primary policy limits." *DiCocco v. Nat'l Gen. Ins. Co.*, 140 P.3d 314, 316 (Colo. App. 2006). Once it was clear that plaintiff's claim would exceed the Landmark Policy limits, its claim against defendant for defense costs was ripe, or, more specifically, accrued because the injury was apparent. This holding is also supported by the reason statutes of limitation are in place, which is to "afford security against stale demands[.]" *Christenbury Eye Ctr.*, 370 N.C. at 5 (quotation and citation omitted). There is nothing on the face of the complaint which would support that the fact that defendant's excess policy would be reached was not apparent before July 2020.

The Court has considered the arguments of the parties and defendant has persuasively argued that it is clear from the face of the complaint and those documents which the Court may consider without converting the motion to one for summary judgment that the three-year statute of

8

limitations bars plaintiff's claim for defense costs arising out of the Rigby I/Georgia Actions. For the reasons discussed above and those presented by defendant in its briefing, the Court grants the motion to dismiss the claims for defense costs for the Rigby I and Georgia Actions.

B. *Plaintiff has failed to plausibly allege unfair and deceptive trade practices claims.*

Unfair and deceptive trade practice claims are "distinct from actions for breach of contract[.]" *Boyd v. Drum*, 129 N.C. App. 586, 593 (1998). To establish a violation of the Unfair and Deceptive Trade Practices Act (UDTP), a plaintiff must show "(1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Gray v. N.C. Underwriting Ass'n*, 352 N.C. 61, 68 (2000). "Mere breach of contract is not sufficient to sustain an action for UDTP, but if the breach is surrounded by substantial aggravating circumstances, it may sustain an action for UDTP." *Griffith v. Glen Wood Co.*, 184 N.C. App. 206, 217 (2007). Indeed, even a "fundamental disagreement about a contract[,]" including a disagreement about whether a loss is covered under an insurance policy, is not a substantial aggravating circumstance. *Martinez v. Nat'l Union Fire Ins. Co.*, 911 F. Supp. 2d 331, 339 (E.D.N.C. 2012). Additionally, a plaintiff may rely on the North Carolina Unfair Claim Settlement Practices Act, N.C. Gen. Stat. § 58-63-15(11) (Unfair Claim Settlement Act), which itself provides no private right of action, but a violation of which constitutes a UDTP. *Elliott v. Am. States Ins. Co.*, 883 F.3d 384, 396 (4th Cir. 2018).

Here, plaintiff relies on the Unfair Claim Settlement Act to support its UDTP claim. It alleges that defendant misrepresented pertinent facts and policy provisions in its denial of coverage. *See* N.C. Gen. Stat. § 58-63-15(11)(a). Plaintiff further alleges that defendant failed to attempt in good faith to effectuate a prompt and fair settlement of plaintiff's claims once liability became reasonably clear. *Id.* § 58-63-15(11)(f). Plaintiff's allegations in support of its claims

9

include defendant's reliance on the contract liability exclusion in the policy to deny coverage, its failure to act reasonably promptly upon claims communications, and its reliance on an interlocutory order by the Wake County Superior Court in support of its decision to deny coverage.

Plaintiff's UDTP allegations amount primarily to legal conclusions which the Court need not treat as true. Plaintiff's UDTP factual allegations further lack sufficient support to nudge the claims across the line from conceivable to plausible and, at bottom, merely support its claims for breach of insurance contract. Citing to the Unfair Claim Settlement Act while realleging breach of contract allegations is insufficient, even at the Rule 12(b)(6) stage, to plausibly allege a UDTP claim. *See Popper v. Hartford Fin. Servs. Grp., Inc.*, 682 F. Supp. 3d 469, 477 (E.D.N.C. 2023). This claim will be dismissed.

C. *The Court will permit the remaining claims to proceed.*

The Court has considered the arguments in support of dismissal of the remainder of plaintiff's claims under the applicable standard and determines that, at this stage, dismissal is not appropriate. The motion to dismiss is therefore granted in part and denied in part.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion to dismiss [DE 10] is GRANTED IN PART and DENIED IN PART. Plaintiff's fifth, sixth, seventh, eighth, and ninth claims for relief are DISMISSED. Plaintiff's first, second, third, and fourth claims for relief shall proceed.

SO ORDERED, this _17_ day of July 2024.

Terrence Boyle
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE